IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>A. PADILLA, et al.,<br><br>    Defendants. | No. C 15-02295 HRL (PR)<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND** |

Plaintiff, a state prisoner at California State Prison, filed the instant pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging unconstitutional acts by prison officials at Correctional Training Facility ("CTF") in Soledad, California. Plaintiff's motion for leave to proceed in forma pauperis will be granted in a separate order.

## DISCUSSION

### A. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who

is immune from such relief. See id. § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

**B.    Plaintiff's Claims**

According to the complaint, on May 29, 2014, Plaintiff was called to the CTF Central Unit Three Program Office for a rules violation report ("RVR") hearing before named defendant Lieutenant Padilla. (Docket No. 1 at 3.) Plaintiff felt threatened by Lt. Padilla's "abusive, threatening, belittling, and aggressive" demeanor and tone. (Ibid.) Plaintiff decided to leave the hearing, telling Lt. Padilla, "I don't give a fuck about this hearing you can finish this shit without me." (Id. at 29.) Plaintiff claims that Lt. Padilla followed him out of the room and continued to verbally attack him. (Id. at 3–4.) Plaintiff verbally expressed his frustration with Lt. Padilla's continued attack, using profanity and telling Lt. Padilla: "I got something for you." (Id. at 3–4 and 30.) Lt. Padilla interpreted Plaintiff's statement as a threat and asked Plaintiff to place his hands behind his back. (Id. at 4 and 30.) Plaintiff complied with Lt. Padilla's request and allowed himself to be handcuffed. (Id. at 4.) Plaintiff claims that Lt. Padilla placed the handcuffs tightly around Plaintiff's wrists and violently twisted Plaintiff's right hand upside down, limiting the blood circulation to Plaintiff's hands and resulting in his hands turning a dark purplish color. (Ibid.) Lt. Padilla violently forced Plaintiff into the front doorway of the office and then into the hallway wall, all the while twisting Plaintiff's right hand with great force. (Ibid.)

At that point, Plaintiff noticed named defendant Captain D. Benedetti observing the events. (Docket No. 1 at 4.) Plaintiff asked her if she was going to just stand there and allow Lt. Padilla to use excessive force on him. (Ibid.) Captain Benedetti did not

respond. (Ibid.) Lt. Padilla placed Plaintiff in a holding cell. (Ibid.) While Plaintiff was in the holding cell, Correctional Officer S. M. Rothman, a non-party to this action, observed that the handcuffs were too tight on Plaintiff and advised Lt. Padilla and Captain Benedetti accordingly. (Id. at 4–5.) Shortly thereafter, Officer Rothman attempted to remove Plaintiff's handcuffs. (Id. at 5.) Plaintiff refused to have the handcuffs removed until MTA arrived and documented the swollen hands. (Ibid.)

Soon thereafter, Plaintiff was transferred to a holding cell in the mental health building. (Docket No. 1 at 5.) Associate Warden Wilson, a named defendant, approached Plaintiff and asked why he was handcuffed in the holding cell. (Ibid.) Plaintiff explained what had transpired and Associate Warden Wilson immediately ordered that his staff remove the handcuffs, which they did. (Ibid.) An hour later, Plaintiff was taken to administrative segregation where he was housed until he appeared before an Institutional Classification Committee ("ICC") on June 5, 2014. (Ibid.) The ICC, Associate Warden Wilson, and Warden M.E. Spearman, a named defendant found that Plaintiff's alleged statement to Lt. Padilla should not be regarded as a threat and ordered Plaintiff's immediate release from administrative segregation. (Ibid.)

C. **Analysis**

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. Helling v. McKinney, 509 U.S. 25, 31 (1993). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted). The core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley, 475 U.S. at 320-21; Jeffers v. Gomez, 267 F.3d 895, 912-13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot, but applying "deliberate indifference" standard to

claim that guards failed to act on rumors of violence to prevent the riot). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7. A significant injury is not a threshold requirement for stating an excessive force claim. Id. To be liable under the Eighth Amendment for the use of force by subordinate prison guards, a supervisor's actions (e.g. substandard training, supervision, policy creation) must have resulted from malice, sadism or an intent to cause the inmate harm. Jeffers v. Gomez, 267 F.3d 895, 918 (9th Cir. 2001) (no showing of requisite malice, sadism or intent to harm by director of state prison system who was not present at prison riot and warden who simply failed to take immediate command of the prison).

      Liberally construed, Plaintiff has stated a cognizable claim against Lt. Padilla and Captain Benedetti for use of excessive force. However, he has failed to state a claim against the other named defendants: Associate Warden Wilson, Warden Spearman, Sergeant Stephens, and mental health clinicians Onlibogli and Robertson. His only allegations against Associate Warden Wilson are that Wilson ordered that Plaintiff's handcuffs be removed and that Wilson participated in the ICC finding that Plaintiff had not threatened Lt. Padilla. Plaintiff's only allegation against Warden Spearman is that he participated in the ICC finding that Plaintiff had not threatened Lt. Padilla. Neither of these allegations state an Eighth Amendment claim for use of excessive force against Associate Warden Wilson or Warden Spearman. Plaintiff makes no allegations in his complaint about Sergeant Stephens or about mental health clinicians Onlibogli and Robertson. While these five defendants (Associate Warden Wilson, Warden Spearman, Sergeant Stephens, and mental health clinicians Onlibogli and Robertson) are referenced in the attachments to the complaint, Plaintiff fails to meet

the minimum pleading requirements to state a § 1983 claim against these five defendants. At a minimum, he must provide sufficient underlying facts to give Associate Warden Wilson, Warden Spearman, Sergeant Stephens, and mental health clinicians Onlibogli and Robertson fair notice of the claims against them, *e.g.*, what specific federal rights were violated, when the alleged violations occurred, and how each defendant was responsible for the violations. Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). Plaintiff shall be granted leave to amend to attempt to cure these deficiencies.

In amending his complaint, Plaintiff is advised that liability may be imposed on an individual defendant under § 1983 only if Plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981). A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. See Leer, 844 F.2d at 633.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

The complaint is DISMISSED with leave to amend. Within **twenty-eight (28) days** of the date this order is filed, Plaintiff shall file an amended complaint using the court's form complaint. The amended complaint must include the caption and civil case number used in this order, i.e., Case No. C 15-02295 HRL (PR), and the words "FIRST AMENDED COMPLAINT" on the first page. Plaintiff must answer all the questions on the form in order for the action to proceed.

Along with addressing the deficiencies identified above, Plaintiff shall state the cognizable claim against Defendants Padilla and Benedetti in the first amended complaint as the first amended complaint will supercede all prior complaints in their entirety. Plaintiff may not make any references to the original complaint in the first

amended complaint, or rely on any exhibits attached to the original complaint.  Claims not included in an amended complaint are no longer claims and defendants not named in an amended complaint are no longer defendants.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).

**Failure to respond in accordance with this order by filing a first amended complaint will result in the dismissal of Defendants Associate Warden Wilson, Warden Spearman, Sergeant Stephens, and mental health clinicians Onlibogli and Robertson from this action, and they will be stricken from the complaint for failure to state a claim.  This action will then proceed only on the excessive force claim against Defendants Padilla and Benedetti contained therein.**

The Clerk shall include two copies of the court's complaint with a copy of this order to Plaintiff.

**IT IS SO ORDERED.**

DATED: 6/26/15

HOWARD R. LLOYD
United States Magistrate Judge